

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00105-CV

**IN THE INTEREST OF S.P.**, N.I.A.D., A.D., and N.C.N.D., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01460
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: June 20, 2024

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her children, S.P., N.I.A.D., A.D., and N.C.N.D.[1]

Mom challenges the legal and factual sufficiency of the evidence for the trial court's findings on the best interests of the children.

Because the evidence was legally and factually sufficient to support the trial court's findings under the elevated evidentiary standards, we affirm the trial court's order.

### BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those relating to Mom and the children.

---

[1] We use aliases to protect the children's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

Mom's children were initially removed from her home because A.D. and N.C.N.D. were found wandering in the street while their parents were passed out at home. At the time, A.D. was four years old, and N.C.N.D. was two years old. When police found the parents, they also saw methamphetamine paraphernalia.

During Mom's case with the Department, its primary concern about her was her drug use. To address it, the Department created a service plan, which Mom acknowledged and signed. Mom "engaged somewhat" with the service plan. She then relapsed about eight months after beginning her plan. She tried to engage with a second program, but she was inconsistent. She admitted to relapse again four months after her first relapse. Two months after her second relapse (and a month or two before trial), Mom attended a drug assessment for a third treatment program, but she failed in any further treatment.

After her initial relapse, Mom submitted to three of fifteen assigned drug tests. The results were "concerning to the Department."

Mom attempted to work on her counseling requirement during her case with the Department, but she failed to complete it. She was discharged for not participating regularly. By the time of trial, she had completed only her psychosocial evaluation.

Mom was also assigned to complete a parenting class, which she did not do.

Mom also did not maintain appropriate housing for her children. During the case, she lived in a shed at the tire company where she worked.

Mom did visit with her children, and the visits were appropriate for the children. However, because the trial court found that 1) Mom constructively abandoned her children; 2) she failed to comply with provisions of the court's order; 3) she continued to abuse drugs during her case; and 4) it would be in the children's best interests to terminate her parental rights, the trial court terminated Mom's parental rights.

Mom now appeals. She challenges the legal and factual sufficiency of the evidence on the best interests of the children. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review. We apply those standards here.

**BEST INTERESTS OF THE CHILD**

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**A.      Unchallenged Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found that 1) Mom constructively abandoned her children; 2) she failed to comply with provisions of the court's order; and 3) she continued to abuse drugs during her case. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

Mom does not directly challenge the trial court's rulings under subsections (N), (O), and (P), and we do not address them. *See* TEX. R. APP. P. 38.1(f), (i); *Interest of Z.E.L.B.H.*, No. 04-20-00118-CV, 2020 WL 4218883, at *1 (Tex. App.—San Antonio July 22, 2020, no pet.) (mem. op.) (citing *In re J.F.C.*, 96 S.W.3d 256, 263–67 (Tex. 2002)). Instead, Mom challenges and we address the trial court's best interest findings.

**B.      Best Interest of the Children Factors**

The Family Code statutory factors[v] and the *Holley* factors[vi] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the children.

The trial court heard the following testimony regarding the children's ages and vulnerabilities, Mom's course of conduct, and the children's placements.

*1.   The Children's Desires*

Appellant has correctly stated that the children's desires were not discussed at any length at trial, and several of the children were too small to articulate their desires. The Department also aptly argued that when a child is too young to express his desires, the trial court may consider whether the child has bonded with current caregivers, is well-cared for by them, and has spent minimal time with the parent. *See Interest of E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.) (en banc) (citing *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied)).

When Mom's case with the Department began, the children were seven, five, four, and two years old. By the time of trial, S.P., N.I.A.D., A.D., and N.C.N.D were nine, seven, five, and four years old, respectively.

According to the record, the children did not react to the news that Mom's parental rights might be terminated, except that the children tended to agree that they were comfortable with their placements—especially S.P., whose placement "was for sure willing to adopt."

Mom accurately points out that the children have all been placed separately in foster care, though sibling contact is very important to them. To the children's benefit, their placements were able to facilitate sibling contact over the pendency of Mom's case, and they indicated their willingness to continue if Mom's parental rights were terminated.

Overall, the children were bonded to and cared for by their caregivers. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (factor (A)); TEX. FAM. CODE ANN. § 263.307(b)(1).

### 2. *The Children's Present and Future Emotional and Physical Needs*

The children required stable placements and permanency, which the Department was working toward helping them achieve. *See Holley*, 544 S.W.2d at 372 (factor (B)); TEX. FAM. CODE ANN. § 263.307(b)(1). N.C.N.D., for example, required counseling for his behavioral issues—he would smack himself and break toys. His placement was taking him to counseling appointments weekly to address his behavioral issues.

A.D. also exhibited behavioral issues that required counseling, for which she was placed in therapeutic foster care. Her specialty placement was helping her address her counseling needs. *See Holley*, 544 S.W.2d at 372 (factor (B)); TEX. FAM. CODE ANN. § 263.307(b)(12)(F).

### 3. *Emotional and Physical Danger to the Child Now and in the Future*

As Mom correctly conceded, her drug use in the home presented a danger to her children. *See Holley*, 544 S.W.2d at 372 (factor (D)). Over the course of her case, she was unable to fully

abstain and successfully complete drug treatment. After she relapsed, she failed to follow through with all her required drug testing, and she was apparently unable to make lasting changes for the benefit of her children. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013) ("Non-compliance with a service plan is probative of a child's best interest."). Because Mom could not overcome her drug use and complete her services, it did not seem she was ready and able to responsibly care for her children by the time of trial. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)); TEX. FAM. CODE ANN. § 263.307(b)(1); *see also In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("[A] court may judge a parent's future conduct by her past conduct.").

### 4. Parental Abilities of the Individuals Seeking Custody

Not only was Mom unable to curb her drug abuse over the course of her case, she also did not complete the parenting class that was required by her service plan. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D)); TEX. FAM. CODE ANN. § 263.307(b)(1), (12).

In contrast, the children's foster parents cared for the children, took them to their medical and dental appointments, and provided them appropriate and safe housing.

### 5. Programs Available to Assist These Individuals to Promote the Best Interest of the Children

Mom was referred to services that would have helped her complete her service plan and become a better parent. *See Holley*, 544 S.W.2d at 372 (factor (E)). However, Mom did not comply with service requirements and was discharged from her programs due to her lack of regular engagement. TEX. FAM. CODE ANN. § 263.307(b)(11).

### 6. Plans for the Children by These Individuals or by the Agency Seeking Custody

As stated, S.P.'s placement planned to adopt him. *See Holley*, 544 S.W.2d at 372 (factor (F)). The Department was also working toward N.I.A.D. moving to S.P.'s placement. N.C.N.D.'s

placement was potentially adoptive, though the Department was considering an alternative placement because of N.C.N.D.'s behavioral issues. A.D.'s placement, though therapeutic, was not adoptive. The trial court assigned the Department as managing conservator for all the children pending further placement or adoption.

At trial, the trial court also heard about or heard from family or fictive kin who could take the children, which the Department indicated it would follow up on as managing conservator.

### 7. *Stability of the Home or Proposed Placement*

As stated, the children's foster placements provided them with appropriate and safe housing. In contrast, Mom did not follow up on possible avenues for appropriate housing during her case. Her case supervisor stated that Mom was provided resources for "sliding scale" and "second chance" apartments. Nevertheless, Mom lamented that she struggled to find a place to live (other than the shed at the tire store where she worked) because of her criminal history. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G)); TEX. FAM. CODE ANN. § 263.307(b)(12)(D).

## C. Sufficient Evidence

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in S.P., N.I.A.D., A.D., and N.C.N.D.'s best interests for Mom's parental rights to be terminated and for the children to remain with their placements. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

**CONCLUSION**

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N), (O), and (P):

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment;
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;
> (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
> (i) failed to complete a court-ordered substance abuse treatment program; or
> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance

*Id.* § 161.001(b)(1)(N), (O), (P).

[iii] Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

[iv] Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[v] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;

(4)    whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)    whether the child is fearful of living in or returning to the child's home;

(6)    the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)    whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)    whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)    whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[vi] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).